1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
5  ALLAN YANNOW, State Bar No. 63257
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5955
    Fax:  (415) 703-1234
8   Email:  Allan.Yannow@doj.ca.gov

9  Attorneys for Respondent

10              IN THE UNITED STATES DISTRICT COURT

11          FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                  SAN FRANCISCO DIVISION

13
   **ROBERT LAMAR BALL,**                    C 07-2726 MMC (PR)
14
                                  Petitioner,
15
            **v.**
16
   **D.K. SISTO, Warden,**
17
                                  Respondent.
18

19      **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER**

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2                                                                                       **Page**

3    STATEMENT OF THE CASE                                                                  1

4    STATEMENT OF FACTS                                                                     2

5    STANDARD OF REVIEW                                                                     3

6    ARGUMENT                                                                               4

7        I.      THE STATE COURT REASONABLY FOUND THAT THE
                 JUROR WAS UNBIASED                                                         4
8
         II.     PETITIONER WAIVED HIS RIGHT TO A JURY TRIAL ON
9                THE ISSUE OF WHETHER THE CURRENT OFFENSE WAS A
                 SERIOUS FELONY                                                             7
10
                 A.   Facts                                                                 8
11
                 B.   Petitioner Effectively Waived Any Constitutional Jury Trial Right He
12                    Might Have Had                                                        9

13       III.    COUNSEL WAS NOT PREJUDICIALLY INEFFECTIVE                                 10

14   CONCLUSION                                                                            13

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2                                                                                          **Page**

3  **Cases**

4

5  *Apprendi v. New Jersey*
   530 U.S. 466 (2000)                                                                         9

6  *Blakeley v. Washington*
   542 U.S. 296 (2004)                                                                      9, 10
7

8  *Bonin v. Calderon*
   59 F.3d 815 (9th Cir. 1995)                                                                 7

9  *Brecht v. Abrahamson*
   507 U.S. 619 (1993)                                                                         4
10

11 *Colorado v. New Mexico*
   467 U.S. 310 (1984)                                                                         7

12 *Davis v. Woodford*
   333 F.3d 982 (9th Cir. 2003)                                                                4
13

14 *Fry v. Pliler*
   127 S.Ct. 2321 (2007)                                                                       4

15 *Hernandez v. Small*
   282 F.3d 1132 (9th Cir. 2002)                                                               4
16

17 *Himes v. Thompson*
   336 F.3d 848 (9th Cir. 2003)                                                               11

18 *Marshall v. Lonberger*
   459 U.S. 422 (1983)                                                                         7
19

20 *Miller-El v. Cockrell*
   537 U.S. 322 (2003)                                                                         4

21 *Patton v. Yount*
   467 U.S. 1025 (1984)                                                                        7
22

23 *Sims v. Rowland*
   414 F.3d 1148 (9th Cir. 2005)                                                               7

24 *Sophanthavong v. Palmateer*
   378 F.3d 859 (9th Cir. 2004)                                                                7
25

26 *Strickland v. Washington*
   466 U.S. 664 (1984)                                                                     11, 12

27 *United States v. Dominguez*
   226 F.3d 1235 (11th Cir. 2000)                                                              7
28

**TABLE OF AUTHORITIES  (continued)**

Page

*United States v. Mikutowicz*
365 F.3d 65 (1st Cir. 2004)                                                    6

*Williams v. Taylor*
529 U.S. 362 (2001)                                                         3, 4

*Woodford v. Visciotti*
537 U.S. 19 (2002)                                                             4


**Constitutional Provisions**


United States Constitution
        Sixth Amendment                                                       10


**Statutes**


United States Code, Title 28
        § 2254                                                                 3
        § 2254(d)                                                              3
        § 2254(d)(2)                                                           4
        § 2254(e)(1)                                                    4, 7, 10

Antiterrorism and Effective Death Penalty Act of 1996                      3, 4

California Penal Code
        § 243(d)                                                               1
        § 245.2                                                                1
        § 667(a)                                                               1
        § 1170.12(c)(2)                                                        1
        § 1192.7(c)                                                            1

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
5  ALLAN YANNOW, State Bar No. 63257
   Deputy Attorney General
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA  94102-7004
7    Telephone:  (415) 703-5955
     Fax:  (415) 703-1234
8    Email:  Allan.Yannow@doj.ca.gov

9  Attorneys for Respondent

10              IN THE UNITED STATES DISTRICT COURT

11            FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                    SAN FRANCISCO DIVISION

13

14  **ROBERT LAMAR BALL,**                     C 07-2726 MMC (PR)

15                           Petitioner,    **MEMORANDUM OF POINTS
                                            AND AUTHORITIES IN
                                            SUPPORT OF ANSWER**
16        **v.**

17  **D.K. SISTO, Warden,**

18                          Respondent.

19

20                    **STATEMENT OF THE CASE**

21          The San Mateo County district attorney filed an information, which as amended, charged

22  petitioner with one count of assault on a transportation worker with a deadly weapon or by means

23  of force likely to produce great bodily injury, Cal. Penal Code § 245.2 – count one, and one count

24  of felony battery, Cal. Penal Code § 243(d) – count two.  The district attorney alleged that both

25  offenses were serious felonies,  Cal. Penal Code § 1192.7(c).  The district attorney also alleged that

26  petitioner had two prior strike convictions, Cal. Penal Code § 1170.12(c)(2), and that both prior

27  convictions were for serious felonies.  Cal. Penal Code, § 667(a).  CT 4-7, 41-45.

28          The first taking of evidence occurred on April 6, 2005.  CT 83.

1   On April 8, 2005, the jury found petitioner guilty as charged on count one, found him not

2   guilty on the charged offense in count two, but found him guilty of two lesser offenses

3   (misdemeanor assault and misdemeanor battery). CT 100, 141-144.

4   On April 11, 2005, the court found that the current offense was a serious felony, that the

5   allegation of the strikes were true and that the allegations of the prior serious felonies were true. CT

6   147-148, RT 414-415. The prosecutor then amended the information to delete one prior strike. CT

7   147, RT 415-416.

8   On May 10, 2005, the court imposed the lower term of three years on count one, doubled

9   it for the prior strike, and imposed two consecutive terms of five years for the prior serious felonies.

10   The court ordered that petitioner serve six months in county jail for the misdemeanor offenses, and

11   made them concurrent, and found that petitioner's custody credits exceeded the six month terms.

12   Petitioner's total unstayed term was 16 years. CT 188-189.

13   On June 14, 2006, the Court of Appeal affirmed the conviction of felony assault on a

14   transportation worker and misdemeanor battery, but reversed the conviction of misdemeanor assault

15   on the basis that the assault was encompassed within the misdemeanor battery conviction. The

16   Court also modified the sentence. Exh. F at 14.

17   On June 28, 2006, the Court of Appeal denied petitioner's petition for writ of habeas

18   corpus. Exh. J.

19   On September 20, 2006, the California Supreme Court denied review. Exh. N. On that

20   date the California Supreme Court also denied petitioner's petition for writ of habeas corpus. Exh.

21   L.

22                          **STATEMENT OF FACTS**

23   The Court of Appeal described the underlying facts as follows:

24   On August 27, 2004, appellant boarded CalTrain headed northbound for San Francisco.
     At approximately 11:00 a.m., conductor Rick Cano entered the car in which appellant was
25   seated and began to collect tickets. When Cano first saw appellant, he appeared to be
     sleeping. Cano then proceeded through the car collecting tickets from other passengers
26   before returning to appellant.

27   When Cano asked appellant for his ticket, appellant handed him the ticket in an angry
     manner without saying anything. Cano examined the ticket and realized the fare appellant
28   paid was insufficient. He told appellant he would need to get off at the next stop in

Redwood City to purchase a $1.25 upgrade. Cano returned to collecting tickets from the rest of the passengers.

Once the train began approaching Redwood City, Cano returned to appellant and told him they were approaching the station where he would need to purchase an upgrade. At that point, appellant jumped out of his seat and punched Cano in the chest. Cano testified that he thought he saw something metallic in appellant's hand before he was punched, and he felt a sharp pain once he was struck-causing him to have shortness of breath. Cano testified he believed he had been stabbed in the heart.

Cano then began struggling with appellant, trying to hold him as appellant continued to punch him in what Cano described as a "[barrage] of blows." Appellant shoved him around the train car, including into the stairwell and ultimately into a pole in the vestibule area of the train. Eventually, assistant conductor Elizabeth Aspoy and two passengers intervened and separated appellant and Cano. Both Cano and Ms. Aspoy noticed a metal chain and lock on the floor, which appellant admitted were his.

Cano was hospitalized after the altercation. His body was bruised, and his rib was fractured. He also noticed markings of what looked like a chain on his ribs.

Dr. Leland Luna examined Cano on August 31, 2004. Cano complained of pain in his ribs and had problems breathing. Dr. Luna concluded that Cano's ninth right rib had been fractured. He stated that the injury depicted in a photo taken of Cano's chest, was consistent with the bruising one would see from a blow delivered by a fist with a metal chain wrapped around it. The injury would also be consistent with a blow from a fist. If a chain were wrapped around a fist or if it were completely enclosed, the punch would inflict more damage than would a regular punch.

Appellant testified in his own behalf. He admitted that he had purchased the wrong ticket. He stated that the conductor was rude to him. He admitted that he got up suddenly from his seat, but claimed that the conductor struck him first. Appellant was hit in the neck. Appellant threw a punch during the struggle but did not land one. However, during the struggle the victim came in contact with the poles in the train. A bicycle chain appellant was carrying fell out of his pocket during the struggle. Appellant did not hit the conductor with the chain, and did not try to use the chain during the fight.

Exh. F at 2-3.

## STANDARD OF REVIEW

This court's review of the state court's decision is limited by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254. The AEDPA permits this court to grant relief only if the state court's decision "(1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court . . .; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The first prong applies both to questions of law and to mixed questions of law and fact, *Williams v. Taylor*, 529 U.S. 362, 407-09 (2001), while the second prong applies to decisions based

1   on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322 (2003).

2       To satisfy the "unreasonable application" portion of the first prong, the petitioner must

3   demonstrate that the state court's application of Supreme Court precedent to the facts of his case was

4   not only incorrect but was "objectively unreasonable." *Woodford v. Visciotti*, 537 U.S. 19 (2002).

5       Factual determinations by state courts are presumed correct absent clear and convincing

6   evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and

7   based on a factual determination will not be overturned on factual grounds unless it is objectively

8   unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).

9   *Miller-El v. Cockrell*,  537 U.S. 322, 340; *Davis v. Woodford*, 333 F.3d 982, 990-991 (9th Cir.

10  2003).

11      Decisions of the Supreme Court are the only ones that can form the basis for habeas relief.

12  "Lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy

13  the AEDPA bar." *Williams v. Taylor*, 529 U.S. 362, 381.  Moreover, this court reviews the state

14  court's decision rather than its reasoning. *Hernandez v. Small*, 282 F.3d 1132, 1140 (9th Cir. 2002).

15      If this Court finds constitutional error, habeas relief is unwarranted unless the error had

16  a substantial and injurious effect on the verdict. *Fry v. Pliler*, 127 S.Ct. 2321 (2007); *Brecht v.*

17  *Abrahamson*, 507 U.S. 619, 637 (1993).

18                              **ARGUMENT**

19                                 **I.**

20  **THE STATE COURT REASONABLY FOUND THAT THE JUROR WAS
    UNBIASED**

21

22      Petitioner contends that he was deprived of his right to an impartial jury by the court's

23  failure to remove a seated juror who allegedly was biased.

24      The Court of Appeal described the facts as follows:

25      During the examination of the victim in this case, the court learned that a juror had written
        in her notebook "the defendant is guilty." Although it is not clear from the record, it
26      appears the bailiff noticed the writing in Juror No. 2's notebook when it was left open on
        a chair during the trial, and reported it to the court.
27
28      In response, the court conducted an inquiry outside the presence of the other jurors. After
        the court reminded Juror No. 2 about the instruction to keep an open mind and not to form

1  any opinion until the matter is submitted [FN3], this discussion ensued:

2      FN3. The jurors had been instructed: "During the course of this trial and before
       you begin your deliberations, you must keep an open mind on this case and
3      upon all the issues you will be asked to decide. In other words, you must not
       form or express any opinions on this case until the matter is finally submitted
4      to you."

5  JUROR NO. 2: I just want to do everything right. That's all. Like I said, I'm very honest.
   I just happened to—
6
   THE COURT: We appreciate your candor.
7
   JUROR NO. 2: I understand. Obviously, I was not clear about it. That's why I—okay. I
8  am now. Thank you.

9  THE COURT: You had written down in your notes something about an opinion that you
   had at the time?
10
   JUROR NO. 2: Right. But it was inconclusive. It was just subjective. I didn't—
11
   THE COURT: Sure.
12
   JUROR NO. 2: Should I scratch it out?
13
   THE COURT: No. I'm not going to ask you to do that.
14
   JUROR NO. 2: Okay.
15
   THE COURT: What I am going to ask you only is this: With that instruction I just read
16 to you, about the fact you must keep an open mind on this case, upon all the issues you
   will be asked to decide—
17
   JUROR NO. 2: Yes.
18
   THE COURT: —and keeping in mind that you have not heard all the evidence in this
19 case—

20 JUROR NO. 2: Right.

21 THE COURT: —and you haven't heard from, for instance, the defendant, who is going
   to be testifying later, we understand, from what we've been informed—
22
   JUROR NO.2: Right.
23
   THE COURT: —are you able to follow the Court's instructions about keeping an open
24 mind on all the issues in this case, and not to form or express any opinions on this case
   until the matter is finally submitted to you?
25
   JUROR NO. 2: Absolutely. I'm a very open-minded person.
26
   THE COURT: Well, that's what we had to discuss with you a moment.
27
   JUROR NO. 2: All right, sir.
28

1

2

THE COURT: Let me ask you this, also. Have you discussed what you wrote in your notebook?

JUROR NO. 2: I've discussed it with no one.

3

4

THE COURT: That was my question.

JUROR NO. 2: We're not supposed to.

5

6

THE COURT: That's right, you are not."

The court noted that counsel had been asked at sidebar whether they had any questions for Juror No. 2, and both sides said they did not.

7

8

9

10

Defense counsel then moved for a mistrial or in the alternative for the seating of an alternate juror. The court denied appellant's motions, stating: "I find that [Juror No. 2] is extremely credible, was kind of compulsively forthright with regard to what she had written. She has advised the court that that is not any type of final opinion. And she's advised the court that she can follow the court's instructions about keeping an open mind. And I find her credible in that regard."

11

12

Exh. F at 4-6.

13

The Court of Appeal rejected petitioner's contention. After discussing principles of state

14

law  principles regarding juror misconduct, and the discretion an appellate court affords a trial

15

court's determination of whether a juror is biased, the court stated:

16

17

18

19

20

Here, the trial court met its duty by conducting the juror interview we have recounted, and the interview constitutes substantial evidence supporting the court's decision not to discharge Juror No. 2.[FN4] In response to careful questioning by the court, Juror No. 2 made clear that she had not formed any fixed opinion about appellant's guilt, she expressed her belief that she could keep an open mind despite her prior misgivings, and she confirmed her willingness to continue serving on the jury. Under these circumstances, the trial court was within its discretion not to remove her from the jury. [Citations.] Because any presumption of prejudice was "amply rebutted," appellant's constitutional rights to trial by jury and to a fair trial were not infringed. [Citation.]

21

22

23

FN4. Appellant claims the trial court failed to ask Juror No. 2 pertinent questions, such as whether or not Juror No. 2 could be fair and unbiased. If appellant thought more probing questions needed to be asked, he was invited to do so. However, he declined.

24

Exh. F at 7.

25

Petitioner contends that the trial court erred in failing to remove the juror, but has not

26

explained the basis for his claim.  Petitioner did not contend before the California Supreme Court

27

and does not contend here, that the court's inquiry was inadequate to make the requisite

28

determination.  The court had substantial discretion to determine the scope of the inquiry.  *United*

1  *States v. Mikutowicz*, 365 F.3d 65, 74 (1st Cir. 2004); *United States v. Dominguez,* 226 F.3d 1235,

2  1246 (11th Cir. 2000); *cf. Sims v. Rowland*, 414 F.3d 1148 (9th Cir. 2005). As the Court of Appeal

3  noted, the trial court offered counsel an opportunity to ask further questions. Exh. F at 7.

4          Rather petitioner's argument is directed to the validity of the court's finding that the juror

5  was not biased. A finding that a juror is not biased is a finding of fact entitled to a presumption of

6  correctness. *Patton v. Yount*, 467 U.S. 1025, 1038 (1984); *Bonin v. Calderon*, 59 F.3d 815, 840-841

7  (9th Cir. 1995). Petitioner's burden is to overcome that factual finding by clear and convincing

8  evidence. 28 U.S.C. § 2254(e)(1). "Clear and convincing evidence requires greater proof than

9  preponderance of the evidence. To meet this higher standard, a party must present sufficient

10 evidence to produce 'in the ultimate factfinder an abiding conviction that the truth of its factual

11 contentions are highly probable.'" *Sophanthavong v. Palmateer*, 378 F.3d 859, 866-867 (9th Cir.

12 2004) (citing *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)). Merely reiterating the same

13 contentions made previously in the state court is not sufficient to rebut the presumption. *Id*. at 867.

14 Further, credibility findings are particularly insulated, because federal habeas courts have "no

15 license to redetermine credibility of witnesses whose demeanor has been observed by the state trial

16 court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 433-434 (1983); *Sophanthavong* at

17 867 ("because the state court conducted an evidentiary hearing in which Mr. Sophanthavong

18 testified, we are required to defer to the state court's credibility findings").

19          Here, the court's finding was supported by the juror's responses to the court's questions.

20 Petitioner has not submitted a substantial argument to the contrary. Thus, petitioner has not shown

21 a basis to grant relief in connection with this claim.

22                                             **II.**

23      **PETITIONER WAIVED HIS RIGHT TO A JURY TRIAL ON THE
        ISSUE OF WHETHER THE CURRENT OFFENSE WAS A SERIOUS**
24      **FELONY**

25          Petitioner contends that the court violated his right to a jury trial by determining that he

26 used a deadly weapon in connection with the current offense. This finding made him eligible for

27 a sentencing enhancement for a prior serious felony. As we will explain, there is no constitutional

28 jury trial right at issue because petitioner was theoretically eligible for a Three Strikes sentence, and

Memorandum of Points and Authorities in Support of Answer - *Ball v. Sisto* - C 07-2726 MMC (PR)

1   the enhancement did not add any additional time to petitioner's maximum term.  Moreover, the

2   Court of Appeal found that petitioner waived his right to a jury trial.

3   **A.   Facts**

4           The Court of Appeal described the relevant facts and legal principles as follows:

5   Section 667, subdivision (a)(1) provides a five-year sentencing enhancement for a person
    convicted of a serious felony who also has a prior serious felony conviction.[Citation.]
6   For purposes of section 667, subdivision (a)(1), "any felony in which the defendant
    *personally used a dangerous or deadly weapon* " is a serious felony (§§ 1192.7, subd.
7   (c)(23) (italics added)). "[A]ssault with a deadly weapon against a public transit employee
    ... in violation of Section[ ] 245.2 ..." is such a serious felony (§§ 1192.7, subd.(c)(32)).

8

9   After the jury returned its verdict, the court found that appellant personally used a deadly
    weapon in connection with the assault on the public transit employee, and therefore his
10  conviction under section 245.2 constituted a serious felony under sections 1192 .7,
    subdivisions (c)(23) and (c)(32). Then, in accordance with section 667, subdivision (a)(1),
11  the court imposed two consecutive five-year sentence enhancements, one for each of
    appellant's two prior serious felony convictions. Appellant claims the "jury's findings
12  here did not permit the trial court to find that the assault on a transportation worker was
    a serious felony as a matter of law."

13  At the hearing on the sentence enhancements, defense counsel argued that an issue existed
    as to whether the *instant offense* qualified as a serious felony because the jury's verdict
14  did not include a finding that appellant used a deadly or dangerous weapon in the
    commission of the assault. Defense counsel pointed out that the jury found appellant
15  "[g]uilty of the crime of assault upon transportation personnel with a deadly weapon to
    wit: metal chain *or* force likely to produce great bodily injury." (Italics added.) Therefore,
16  it was unclear whether the jury's conclusion that appellant violated section 245.2 was
    based upon a finding that a deadly weapon was used in the assault on Cano, or instead that
17  appellant used "force likely to produce great bodily injury" in committing the assault.

18  Moreover, counsel emphasized that the jury acquitted appellant of battery resulting in the
    infliction of serious bodily injury, and convicted him of lesser included misdemeanor
19  assault and battery offenses. Because this lesser offense did not require a finding that
    serious or great bodily injury was inflicted, defense counsel surmised that the jury must
20  have concluded that appellant did not use the bicycle chain during the fight with Cano.
    Accordingly, appellant argued the assault on a transportation worker conviction did not
21  involve the use of a deadly or dangerous weapon, and therefore it did not qualify as a
    serious felony under section 1192.7.

22
    In considering this argument, the trial court indicated "my determination *as trier of fact*
23  here is not to attempt to divine what the jury found." (Italics added.) Instead, the court
    proceeded to make its own factual finding that a deadly or dangerous weapon was used
24  in the assault on Cano "[b]ased on the fact that Mr. Cano, whose testimony I did believe,
    saw the flash of metal with the first swing, based on his description of how he felt after
25  the first punch, based primarily on those two pieces of evidence in the case, I do find
    beyond a reasonable doubt that the allegations under 1192.7(c)(23) and (c)(32) are true."

26

27  Exh. F at 8-9.

28          The Court of Appeal then rejected petitioner's contention that the finding by the court

Memorandum of Points and Authorities in Support of Answer - *Ball v. Sisto* - C 07-2726 MMC (PR)

8

1  violated *Blakeley v. Washington*, 542 U.S. 296 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466

2  (2000), stating:

> Relying primarily on *Blakely, supra,* 542 U.S. 296 and *Apprendi, supra,* 530 U.S. 466,
> appellant contends the trial court erred in denying him a jury trial on the issue of whether
> his current offense constituted a serious felony for purposes of imposition of the five-year
> prior serious felony enhancements. In *Blakely,* the Supreme Court reiterated its holding
> in *Apprendi,* that " '[o]ther than the fact of a prior conviction, any fact that increases the
> penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury,
> and proved beyond a reasonable doubt.' " [Citation.] After *Blakely* and *Apprendi,* it is
> clear that factual findings in order to determine whether the charged offense is a serious
> felony for the purpose of imposing a sentence enhancement under section 667, subdivision
> (a)(1), trigger Sixth Amendment protections. [Citations.]
>
> Plainly, the Supreme Court announced new Sixth Amendment rights in *Blakely.* The
> Court, however, did nothing to disturb the existing jurisprudence applicable to the waiver
> of those Sixth Amendment rights. To the contrary, *Blakely* states: "When a defendant
> pleads guilty, the State is free to seek judicial sentence enhancements so long as the
> defendant either stipulates to the relevant facts or consents to judicial factfinding.
> [Citations.] If appropriate waivers are procured, States may continue to offer judicial
> factfinding as a matter of course to all defendants who plead guilty. *Even a defendant* who
> stands trial may consent to judicial factfinding as to sentence enhancements, which may
> well be in his interest if relevant evidence would prejudice him at trial." [Citation.]
>
> Thus, the *Blakely* court made it clear that a criminal defendant may waive his
> constitutional rights and consent to judicial factfinding as to sentence enhancements. In
> the present case, while the jury deliberated on the charged offenses, appellant waived his
> right to a jury trial and expressly consented to the trial court determining whether or not
> "these *current offenses* qualify under 1192.7." (Italics added.) The court clarified, "if it
> is an issue that has to be decided, you're also going to be having the court determine
> whether or not these offenses constitute offenses under 1192.7." Defense counsel
> responded, "That's fine." Appellant chimed in, "Yes, sir. I do understand that." [FN5]
> Consequently, appellant was put on notice and "consent[ed] to judicial factfinding as to
> sentence enhancements," as sanctioned by *Blakely.* [Citation.]
>
> > FN5. We find the record here is different than the record reviewed in *Taylor,*
> > where the appellate court found "no indication" that the defendant's waiver
> > "extend[ed] to the factual basis for a finding that the charged offenses
> > constituted serious felonies." [Citation.] In contrast, the record before us shows
> > that appellant was informed of, and intended to relinquish, his right to have a
> > jury decide whether or not the current offense for assaulting a transportation
> > worker constituted a serious felony.

Exh. F at 10-11.

## B.    Petitioner Effectively Waived Any Constitutional Jury Trial Right He Might Have Had

Petitioner claimed in the state courts that what he actually waived was a jury trial on the

*legal significance* of the current offense, and that therefore the court erred in finding that he waived

a jury trial on a *factual issue* regarding the way that offense was committed.

1       Initially, this claim does not present an issue regarding the waiver of a federal jury trial

2   right.  The only federal constitutional jury trial right a defendant has at sentencing is with respect

3   to matters that *increase the maximum sentence* that could have been imposed based on the jury's

4   finding,  the defendant's admissions, and findings made by the court after the defendant's waiver

5   of a jury trial.  *Blakely v. Washington*, 542 U.S. at 301.

6       Here petitioner was eligible for a three strikes sentence.  The jury convicted petitioner of

7   a felony, and the court, pursuant to a separate jury trial waiver, found that petitioner had two prior

8   felonies.  It was only because the prosecutor amended the information to strike a prior after the court

9   found that petitioner used a chain, RT 415, that petitioner averted a three strikes  sentence.  Thus at

10   the time the court decided the matter, petitioner was eligible for a three strikes sentence even without

11   a finding that the current offense was a serious felony.

12       Since the finding that the current offense was a serious felony only increased the minimum

13   time petitioner would have to serve before being eligible for consideration for parole if he were

14   sentenced to a Three Strikes term, and did not increase the maximum sentence the court could

15   impose,  petitioner did not have a federal constitutional right to a jury trial on the nature of the

16   current offense.  *Blakely*, 542 U.S. at 301.  Thus, the waiver of the jury trial did not implicate the

17   Sixth Amendment.

18       In any event, the Court of Appeal found that petitioner had effectively waived his right.

19   to a trial on the issue of whether he used a deadly weapon, rather than merely the legal consequence

20   of the jury's finding.  Exh. F at 11.  The court's finding as to the scope of the waiver is entitled to

21   a presumption of correctness, 28 U.S.C. § 2254(e)(1) and petitioner has not rebutted the finding by

22   clear and convincing evidence.  In fact he could not, since the trial court expressly clarified at the

23   time of the waiver that "you're also going to be having the court determine whether or not these

24   offenses constitute offenses under 1192.7."  RT 390.  In light of this finding, petitioner cannot

25   establish a Sixth Amendment violation.

26   **III.**

27   **COUNSEL WAS NOT PREJUDICIALLY INEFFECTIVE**

28       Petitioner contends that counsel was ineffective because he failed to investigate the nature

Memorandum of Points and Authorities in Support of Answer -  *Ball v. Sisto* - C 07-2726 MMC (PR)

1   of the waiver.  In support of this claim he has submitted a declaration from counsel in which counsel

2   stated that his intention and understanding was to have petitioner waive a jury trial on the legal

3   consequences of the current felony, rather than the factual issues presented by the current felony.

4          Petitioner raised a claim of ineffective assistance of counsel in his state petitions for writ

5   of habeas corpus.  The Court of  Appeal and the California Supreme Court denied the respective

6   petition without comment. Exh. L and N.  This Court reviews the record independently to determine

7   whether the state court's denial of relief was objectively  unreasonable. *Himes v. Thompson*, 336

8   F.3d 848, 853 (9th Cir. 2003).

9          Petitioner's burden is to show that counsel deviated from professional norms and that there

10  was a reasonable probability of a more favorable result. *Strickland v. Washington*, 466 U.S. 664,

11  687, 690, 694 (1984).  Although petitioner phrases the issue as involving a failure to investigate, it

12  is not readily apparent how there can be a substantial claim that counsel failed to investigate

13  anything regarding the waiver.  If, as petitioner maintains, counsel told him he was waiving a jury

14  trial only on a legal issue, and petitioner intended to do that and only that, then there was no error

15  or omission by counsel in his investigation.

16         Thus petitioner's claim is actually more in the nature of a claim that counsel did not

17  correctly explain to the court the nature of the right petitioner intended to waive.  However,  the jury

18  trial right that was waived here was not a federal constitutional jury trial right, because that right

19  applies only to matters that increase the maximum sentence the court could impose. *See* Argument

20  II.  A finding that the offense was a serious felony would not increase the maximum sentence that

21  could have been imposed based on the jury's finding and the findings regarding the two strike priors.

22         The reason the court decided the matter without a jury is not simply that counsel did not

23  accurately clarify the nature of the jury waiver.  Rather, when the court stated it would decide the

24  issue, counsel did not object. Instead he made an argument on the merits and submitted the case.

25  RT 412-13.  Whatever his intention was at the outset, he affirmatively led the court to conclude that

26  he had no objection to the court's deciding the factual issues.  Further, counsel's current assertion

27  is belied by the fact that the trial court stated on the record that if petitioner waived his right to a jury

28  the court would "determine whether or not these offenses constitute offenses under 1192.7," and

Memorandum of Points and Authorities in Support of Answer - *Ball v. Sisto* - C 07-2726 MMC (PR)

1    counsel stated, "That's fine." RT 390. The question of whether petitioner personally used a weapon

2    was clearly encompassed within the question of whether the felony assault charge amounted to a

3    serious felony.

4         But even as a claim of ineffective assistance of counsel, petitioner's argument is unsound.

5    Petitioner cannot make out the requisite showing of prejudice, i.e. a reasonable probability of a more

6    favorable result. *Strickland*, 466 U.S. at 694. Petitioner's claim is not that the court's finding was

7    not reliable, but is rather that the finding should have been made by the jury.

8         As we have stated, this court independently reviews the record to determine whether the

9    state court's denial of the petition was an unreasonable application of clearly established federal law

10   or interpretation of the facts. As applied here, this inquiry would appear to be whether it is

11   reasonable to conclude that there is no reasonable probability that a jury would have reached the

12   same finding the court did.

13        The state trial court found beyond a reasonable doubt that petitioner used the chain. RT

14   415. There was ample evidence to support this. Cano testified without contradiction that the punch

15   felt as if the contact were made by something more forceful than skin, and that he saw the markings

16   of a chain on his ribs. RT 77, 85, 92. Dr. Luna, the physician who treated Cano, testified that the

17   bruising was consistent either with a blow from a fist with a metal chain wrapped around it or with

18   a blow from a bare fist. RT 145.

19        While it is true that counsel argued the contrary-- that the jury's verdict on count two

20   showed that the jury did not find beyond a reasonable doubt that petitioner used the chain – counsel

21   also acknowledged that the jury could have also have concluded that petitioner used the chain. RT

22   412-13. The trial court stated that it did not believe the jury could have reached the verdict it did

23   if they had had a reasonable doubt that petitioner used the chain. RT 414. Petitioner has not

24   suggested any substantial reason this conclusion was unreasonable. Accordingly, petitioner cannot

25   show that the state court's denial of the petition for writ of habeas corpus on petitioner's claim of

26   ineffective assistance of counsel involved an unreasonable determination of the facts, or an

27   unreasonable application of clearly established federal law.

28

1

**CONCLUSION**

2      Accordingly, respondent respectfully requests that the petition for writ of habeas corpus

3   be denied.

4      Dated:  October 1, 2007

5                          Respectfully submitted,

6                          EDMUND G. BROWN JR.
                           Attorney General of the State of California

7                          DANE R. GILLETTE
                           Chief Assistant Attorney General

8
                           GERALD A. ENGLER
9                          Senior Assistant Attorney General

                           PEGGY S. RUFFRA
10                         Supervising Deputy Attorney General

11

12                            /s/ Allan Yannow

13                         ALLAN YANNOW
                           Deputy Attorney General

14                         Attorneys for Respondent

15   20105777.wpd
     SF2007401801
16

17

18

19

20

21

22

23

24

25

26

27

28

Memorandum of Points and Authorities in Support of Answer -  *Ball v. Sisto* - C 07-2726 MMC (PR)

13

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:    **Robert Lamar Ball v. D.K. Sisto, Warden**

No.:    **C 07-2726 MMC (PR)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On <u>October 1, 2007</u>, I served the attached

**ANSWER TO ORDER TO SHOW CAUSE;**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER;**

**NOTICE OF LODGING OF, AND INDEX TO, EXHIBITS**

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

**Robert Lamar Ball**
**V-79505**
**California State Prison Solano III, 1-133U**
**P.O. Box 4000**
**Vacaville, CA 95696-4000**

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on October 1, 2007, at San Francisco, California.

| | |
|---|---|
| J. Wong | J Wong |
| Declarant | Signature |

20106441.wpd