1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ROBERT LAMAR BALL,                    )     No. C 07-2726  MMC (PR)
          Petitioner,          )     **ORDER GRANTING IN PART AND**
                                      )     **DENYING IN PART PETITION FOR**
    v.                            )     **A WRIT OF HABEAS CORPUS;**
                                      )     **DIRECTIONS TO CLERK**
WARDEN D.K. SISTO,                    )
          Respondent.         )
_____ )

On June 28, 2007, petitioner, a California prisoner proceeding pro se, filed the above-titled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the validity of his state conviction.  Respondent has filed an answer to the petition and petitioner has filed a traverse.

**PROCEDURAL HISTORY**

The San Mateo County district attorney filed an information charging petitioner with one count of assault on a transportation worker with a deadly weapon or by means of force likely to produce great bodily injury (Cal. Penal Code § 245.2) ("Count 1"), and one count of battery with infliction of great bodily injury (Cal. Penal Code § 243(d)) ("Count 2").  In addition, it was alleged that both offenses constituted serious felonies.  (Cal. Penal Code § 1192.7(c).)[1]  It also was alleged that petitioner had two prior strike convictions (Cal. Penal

_____

[1]Pursuant to § 1192.7, serious felonies include "any felony in which the defendant personally inflicts great bodily injury on any person other than an accomplice," "any felony in which the defendant personally used a dangerous or deadly weapon," and "assault with a deadly weapon against a public transit employee."  Cal. Penal Code § 1192.7(c)(8), (23),

United States District Court
For the Northern District of California

Code § 1170.12(c)(2)), and that both prior convictions were for serious felonies.  (Cal. Penal Code, § 667(a).)  (CT 4-7, 41-45.)

The jury found petitioner guilty as charged on Count 1; the jury found petitioner not guilty of the charged offense in Count 2, but found him guilty of two lesser included offenses:  misdemeanor assault and misdemeanor battery.  (CT 100, 141-144.)

At a separate trial on the sentencing enhancement allegations, the court found the felony assault charged in Count 1 was a serious felony, and that the allegations of the strikes and prior serious felony convictions were true.  (CT 147-148, RT 414-415.)  The prosecutor thereafter amended the information to delete one prior strike as, in the trial court's words, "surplusage."  (CT 147, RT 415-416.)

At the sentencing hearing, the court imposed the lower term of three years on the felony assault, doubled that term based on the prior strike, and imposed two consecutive terms of five years each for the prior serious felonies, resulting in a term of sixteen years in state prison.  (CT 188-189.)

On June 14, 2006, the California Court of Appeal affirmed the convictions of felony assault and misdemeanor battery, but reversed the conviction of misdemeanor assault on the basis that the assault was encompassed within the misdemeanor battery conviction.  (Ex. F at 14.)

On June 28, 2006, the Court of Appeal denied petitioner's petition for a writ of habeas corpus.  (Ex. J.)

On September 20, 2006, the California Supreme Court denied review (Ex. N), and, that same date, denied petitioner's petition for a writ of habeas corpus (Ex. L).

Thereafter, petitioner filed the instant petition for a writ of habeas corpus, raising claims of juror bias, denial of a jury trial on the sentencing allegations, and ineffective assistance of counsel.

---

(32).

2

United States District Court
For the Northern District of California

## STATEMENT OF FACTS

The California Court of Appeal found the facts underlying petitioner's conviction to be as follows:

On August 27, 2004, appellant boarded CalTrain headed northbound for San Francisco. At approximately 11:00 a.m., conductor Rick Cano entered the car in which appellant was seated and began to collect tickets. When Cano first saw appellant, he appeared to be sleeping. Cano then proceeded through the car collecting tickets from other passengers before returning to appellant.

When Cano asked appellant for his ticket, appellant handed him the ticket in an angry manner without saying anything. Cano examined the ticket and realized the fare appellant paid was insufficient. He told appellant he would need to get off at the next stop in Redwood City to purchase a $1.25 upgrade. Cano returned to collecting tickets from the rest of the passengers.

Once the train began approaching Redwood City, Cano returned to appellant and told him they were approaching the station where he would need to purchase an upgrade. At that point, appellant jumped out of his seat and punched Cano in the chest. Cano testified that he thought he saw something metallic in appellant's hand before he was punched, and he felt a sharp pain once he was struck — causing him to have shortness of breath. Cano testified he believed he had been stabbed in the heart.

Cano then began struggling with appellant, trying to hold him as appellant continued to punch him in what Cano described as a "[barrage] of blows." Appellant shoved him around the train car, including into the stairwell and ultimately into a pole in the vestibule area of the train. Eventually, assistant conductor Elizabeth Aspoy and two passengers intervened and separated appellant and Cano. Both Cano and Ms. Aspoy noticed a metal chain and lock on the floor, which appellant admitted were his.

Cano was hospitalized after the altercation. His body was bruised, and his rib was fractured. He also noticed markings of what looked like a chain on his ribs.

Dr. Leland Luna examined Cano on August 31, 2004. Cano complained of pain in his ribs and had problems breathing. Dr. Luna concluded that Cano's ninth right rib had been fractured. He stated that the injury depicted in a photo taken of Cano's chest, was consistent with the bruising one would see from a blow delivered by a fist with a metal chain wrapped around it. The injury would also be consistent with a blow from a fist. If a chain were wrapped around a fist or if it were completely enclosed, the punch would inflict more damage than would a regular punch.

Appellant testified in his own behalf. He admitted that he had purchased the wrong ticket. He stated that the conductor was rude to him. He admitted that he got up suddenly from his seat, but claimed that the conductor struck him first. Appellant was hit in the neck. Appellant threw a punch during the struggle but did not land one. However, during the struggle the victim came in contact with the poles in the train. A bicycle chain appellant was carrying fell out of his pocket during the struggle. Appellant did not hit the conductor with the chain, and did not try to use the chain during the fight.

United States District Court
For the Northern District of California

1   (People v. Ball, No. A110297 (Cal. Ct. App. June 14, 2006) ("Ex. F") at 2-3 (alteration in

2   original).)

3                                        **DISCUSSION**

4   A.      Standard of Review

5           This Court may entertain a petition for a writ of habeas corpus "in behalf of a person

6   in custody pursuant to the judgment of a State court only on the ground that he is in custody

7   in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a);

8   Rose v. Hodges, 423 U.S. 19, 21 (1975).

9           A district court may not grant a petition challenging a state conviction or sentence on

10  the basis of a claim that was reviewed on the merits in state court unless the state court's

11  adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an

12  unreasonable application of, clearly established Federal law, as determined by the Supreme

13  Court of the United States; or (2) resulted in a decision that was based on an unreasonable

14  determination of the facts in light of the evidence presented in the State court proceeding."

15  28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412-13 (2000).[2]  Additionally,

16  habeas relief is warranted only if the constitutional error at issue had a "substantial and

17  injurious effect or influence in determining the jury's verdict."  Penry v. Johnson, 532 U.S.

18  782, 796 (2001) (internal citation omitted).

19          A state court decision is "contrary to" clearly established Supreme Court precedent if

20  it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases"

21  or if it "confronts a set of facts that are materially indistinguishable from a decision of [the

22  Supreme] Court and nevertheless arrives at a result different from [its] precedent." Williams,

23  529 U.S. at 405-06.  "Under the 'unreasonable application' clause, a federal habeas court

24  may grant the writ if the state court identifies the correct governing legal principle from [the

25  Court's decision but unreasonably applies that principle to the facts of the prisoner's case."

26

27          [2]A determination of a factual issue made by a state court is "presumed to be correct,"
    and the petitioner "has the burden of rebutting the presumption of correctness by clear and
28  convincing evidence." 28 U.S.C. § 2254(e)(1).

1    Id. at 413.  "[A] federal habeas court may not issue the writ simply because that court

2    concludes in its independent judgment that the relevant state-court decision applied clearly

3    established federal law erroneously or incorrectly.  Rather, that application must also be

4    unreasonable."  Id. at 411.

5        Section 2254(d)(1) restricts the source of clearly established law to the Supreme

6    Court's jurisprudence.  "Clearly established federal law, as determined by the Supreme Court

7    of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme]

8    Court's decisions as of the time of the relevant state-court decision."  Id. at 412.  "A federal

9    court may not overrule a state court for simply holding a view different from its own, when

10   the precedent from [the Supreme Court] is, at best, ambiguous."  Mitchell v. Esparza, 540

11   U.S. 12, 17 (2003).

12       The state court decision to which § 2254(d) applies is the "last reasoned decision" of

13   the state court.  See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Barker v. Fleming,

14   423 F.3d 1085, 1091-92 (9th Cir. 2005).  Consequently, with respect to petitioner's claims of

15   juror bias and denial of a jury trial on the sentencing allegations herein, which claims were

16   raised by petitioner on direct appeal, the Court "looks through" the California Supreme

17   Court's summary denial of the petition for review to the Court of Appeal's opinion denying

18   the claims on the merits.  Shackleford v. Hubbard, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000)

19   (citing Nunnemaker, 501 U.S. at 803-04).  With respect to petitioner's claim of ineffective

20   assistance of trial counsel, however, which claim petitioner raised by way of state habeas,

21   there is no reasoned decision because both the Court of Appeal and California Supreme

22   Court summarily denied relief.  This Court, therefore, must conduct an independent review of

23   the record to determine whether the California Supreme Court's denial of such claim was an

24   objectively unreasonable application of clearly established federal law.  See Richter v.

25   Hickman, 521 F.3d 1222, 1229 (9th Cir. 2008).

26   B.    Petitioner's Claims

27         1.    Juror Bias

28       Petitioner contends he was deprived of his right to an impartial jury by the trial court's

**United States District Court**
For the Northern District of California

failure to remove a seated juror whom petitioner alleges was biased.

        a.    <u>Background</u>

The Court of Appeal described the relevant facts as follows:

During the examination of the victim in this case, the court learned that a juror had written in her notebook "the defendant is guilty." Although it is not clear from the record, it appears the bailiff noticed the writing in Juror No. 2's notebook when it was left open on a chair during the trial, and reported it to the court.

In response, the court conducted an inquiry outside the presence of the other jurors. After the court reminded Juror No. 2 about the instruction to keep an open mind and not to form any opinion until the matter is submitted [FN3], this discussion ensued:

    FN3. The jurors had been instructed: "During the course of this trial and before you begin your deliberations, you must keep an open mind on this case and upon all the issues you will be asked to decide. In other words, you must not form or express any opinions on this case until the matter is finally submitted to you."

JUROR NO. 2: I just want to do everything right. That's all. Like I said, I'm very honest. I just happened to—

THE COURT: We appreciate your candor.

JUROR NO. 2: I understand. Obviously, I was not clear about it. That's why I—okay. I am now. Thank you.

THE COURT: You had written down in your notes something about an opinion that you had at the time?

JUROR NO. 2: Right. But it was inconclusive. It was just subjective. I didn't—

THE COURT: Sure.

JUROR NO. 2: Should I scratch it out?

THE COURT: No. I'm not going to ask you to do that.

JUROR NO. 2: Okay.

THE COURT: What I am going to ask you only is this: With that instruction I just read to you, about the fact you must keep an open mind on this case, upon all the issues you will be asked to decide—

JUROR NO. 2: Yes.

THE COURT: —and keeping in mind that you have not heard all the evidence in this case—

JUROR NO. 2:  Right.

THE COURT:  —and you haven't heard from, for instance, the defendant, who is going to be testifying later, we understand, from what we've been informed—

JUROR NO.2:  Right.

THE COURT:  —are you able to follow the Court's instructions about keeping an open mind on all the issues in this case, and not to form or express any opinions on this case until the matter is finally submitted to you?

JUROR NO. 2:  Absolutely. I'm a very open-minded person.

THE COURT:  Well, that's what we had to discuss with you a moment.

JUROR NO. 2:  All right, sir.

THE COURT:  Let me ask you this, also.  Have you discussed what you wrote in your notebook?

JUROR NO. 2:  I've discussed it with no one.

THE COURT:  That was my question.

JUROR NO. 2:  We're not supposed to.

THE COURT:  That's right, you are not.

The court noted that counsel had been asked at sidebar whether they had any questions for Juror No. 2, and both sides said they did not.

Defense counsel then moved for a mistrial or in the alternative for the seating of an alternate juror.  The court denied appellant's motions, stating: "I find that [Juror No. 2] is extremely credible, was kind of compulsively forthright with regard to what she had written.  She has advised the court that that is not any type of final opinion.  And she's advised the court that she can follow the court's instructions about keeping an open mind. And I find her credible in that regard.

(Ex. F at 4-6.)

The Court of Appeal went on to reject petitioner's contention that the trial court erred by failing to discharge Juror No. 2.  Specifically, after discussing state law principles regarding juror misconduct and the discretion an appellate court must afford to the trial court's determination whether a juror is biased, the Court of Appeal found as follows:

Here, the trial court met its duty by conducting the juror interview we have recounted, and the interview constitutes substantial evidence supporting the court's decision not to discharge Juror No. 2.[FN4]  In response to careful questioning by the court, Juror No. 2 made clear that she had not formed any fixed opinion about appellant's guilt, she expressed her belief that she could

7

1  keep an open mind despite her prior misgivings, and she confirmed her
2  willingness to continue serving on the jury.  Under these circumstances, the
   trial court was within its discretion not to remove her from the jury.  Because
3  any presumption of prejudice was "amply rebutted," appellant's constitutional
   rights to trial by jury and to a fair trial were not infringed.

4      FN4. Appellant claims the trial court failed to ask Juror No. 2
        pertinent questions, such as whether or not Juror No. 2 could be
5       fair and unbiased.  If appellant thought more probing questions
        needed to be asked, he was invited to do so.  However, he
6       declined.

7  (Ex. F at 7 (internal citations omitted).)

8          b.    Analysis

9      A criminal defendant has a Sixth Amendment right to a "fair trial by a panel of

10 impartial, 'indifferent' jurors."  Irwin v. Dowd, 366 U.S. 717, 722 (1961); Dyer v. Calderon,

11 151 F.3d 970, 973 (9th Cir.), cert. denied, 525 U.S. 1033 (1998).  "If only one juror is unduly

12 biased or prejudiced or improperly influenced, the criminal defendant is denied his Sixth

13 Amendment right to an impartial panel."  United States v. Hendrix, 549 F.2d 1225, 1227 (9th

14 Cir.), cert. denied, 434 U.S. 818 (1977).

15     The relevant test for determining juror bias is whether the juror had such fixed

16 opinions that he or she could not judge impartially the guilt of the defendant.  See Patton v.

17 Yount, 467 U.S. 1025, 1035 (1984); Davis v. Woodford, 384 F.3d 628, 643 (9th Cir. 2004).

18 The Supreme Court has held that "the remedy for allegations of juror partiality is a hearing in

19 which the defendant has the opportunity to prove actual bias."  Smith v. Phillips, 455 U.S.

20 209, 216 (1982).  Actual bias has been defined by the Ninth Circuit as "the existence of a

21 state of mind that leads to an inference that the person will not act with entire impartiality."

22 Fields v. Brown, 503 F.3d 755, 767 (9th Cir. 2007).  "Actual bias is typically found when a

23 prospective juror states that he cannot be impartial, or expresses a view adverse to one

24 party's position and responds equivocally as to whether he could be fair and impartial despite

25 that view."  Id.

26     Here, as noted, the trial court held a hearing to determine whether Juror No. 2 was

27 biased.  Petitioner does not argue that the trial court's inquiry was inadequate to make the

28 requisite determination, or that petitioner was denied the opportunity to ask further questions

8

1   of the juror.  Rather, petitioner's argument is directed to the validity of the trial court's

2   factual finding that the juror was not biased.

3        A state court's finding that a juror is not biased is a finding of fact that is entitled to a

4   presumption of correctness on federal habeas corpus review.  <u>Patton v. Yount</u>, 467 U.S.

5   1025, 1036 (1984).  Such deference is appropriate because, first, the state court's

6   determination "has been made only after an often extended voir dire proceeding designed

7   specifically to identify biased veniremen," <u>id.</u> at 1038, and, second, "the determination is

8   essentially one of credibility, and therefore largely one of demeanor."  <u>Id.</u>

9        Under 28 U.S.C. § 2254(e)(1), the correctness of a state court's factual findings must

10   be presumed unless the petitioner rebuts the presumption of correctness by clear and

11   convincing evidence.  28 U.S.C. § 2254(e)(1).  Such presumption applies equally to factual

12   findings made by the trial and appellate courts.  <u>Tinsley v. Borg</u>, 895 F.2d 520, 526 (9th Cir.

13   1990), <u>cert. denied</u>, 498 U.S. 1091 (1991).  "Clear and convincing evidence requires greater

14   proof than preponderance of the evidence.  To meet this higher standard, a party must present

15   sufficient evidence to produce 'in the ultimate factfinder an abiding conviction that the truth

16   of its factual contentions are [sic] highly probable.'"  <u>Sophanthavong v. Palmateer</u>, 378 F.3d

17   859, 866-867 (9th Cir. 2004) (citing <u>Colorado v. New Mexico</u>, 467 U.S. 310, 316 (1984)

18   (alteration in original).)

19        Here, in denying petitioner's motion for a mistrial, or, alternatively, to discharge Juror

20   No. 2, the trial court expressly found Juror No. 2 was credible in her assertions that she had

21   not prejudged petitioner's guilt and could keep an open mind.  Although the trial court did

22   not explicitly state that Juror No. 2 was not biased, such factual finding is implicit from the

23   record.  <u>See</u> <u>Tinsley</u>, 895 F.2d at 526 (holding presumption of correctness applies to implicit

24   factual determinations).  Further, in rejecting petitioner's claim on direct appeal, the

25   California Court of Appeal expressly found the information obtained during the hearing

26   "constitute[d] substantial evidence supporting the court's decision not to discharge Juror No.

27   2." (Ex. F at 7.)

28        Petitioner's only argument in support of his claim of juror bias is that Juror No. 2 must

United States District Court

For the Northern District of California

1   have been biased because of what she wrote in her notebook after hearing the victim testify.

2   Such argument, however, does not constitute clear and convincing evidence to rebut the

3   factual findings of the state courts noted above, as is required under § 2254(e)(1).  The Court

4   therefore has no basis for finding or concluding that the California courts' rejection of

5   petitioner's juror bias claim was based on an unreasonable determination of the facts in light

6   of the evidence presented in the state court proceedings.  28 U.S.C. § 2254(d)(2).  Nor does

7   the Court have any basis for finding or concluding that the California courts' rejection of

8   such claim either was contrary to or involved an unreasonable application of clearly

9   established Supreme Court law.  28 U.S.C. § 2254(d)(1).

10          Accordingly, petitioner is not entitled to habeas relief on this claim.

11          2.     Denial of Jury Trial on Sentencing Enhancements

12          As noted, after the jury returned its verdict, the court found petitioner had personally

13   used a deadly weapon in connection with the felony assault, and thus found such offense was

14   a serious felony.[3]  The court then imposed two sentence enhancements under Penal Code

15   § 667(a), after finding petitioner had suffered two prior serious felony convictions.

16   Petitioner contends the court's finding that the felony assault was a serious felony violated

17   Apprendi v. New Jersey, 530 U.S. 466 (2003), because petitioner did not waive his right to

18   have the jury determine the issue.

19          a.     Background

20          During the time the jury was deliberating, the court informed the parties that if the

21   jury returned a verdict of guilt, the court's "inclination [was] to have a jury trial with

22   reference to [the] priors."  (RT 380.)  Defense counsel then informed the court that petitioner

23   was willing to waive his right to a jury trial on the priors.  (RT 381.)

24          Thereafter, the following colloquy took place:

25

26   _____

27          [3]A violation of Penal Code § 245.2 is a serious felony if the assault is committed with
     a deadly weapon. (Cal. Penal Code § 1192.7(c)(23), (32).)
28

THE COURT: All right. Mr. Ball, you have spoken to your attorney with reference to your right to a jury trial on all of the allegations that are in the information, such as 1192.7, which deals with the fact that these are serious felonies?

THE DEFENDANT: Yes, sir.

THE COURT:  Also, 1203(e)(4), it's a probation denial allegation, based on having prior felony convictions.  And 1170.12, which are strike allegations with reference to those priors.  And 667 (a) allegations, which are allegations with reference to the fact that these were serious felonies in the past.

Have you spoken to your attorney about that?

THE DEFENDANT: Yes, I have.

THE COURT:  Has he advised you that you have a right to a jury trial with reference to all those issues?

THE DEFENDANT:  (Gesturing.)

THE COURT:  Sure.

THE DEFENDANT:  Sir, I'd like to waive it.

THE COURT:  So, you understand, sir, that you do have a right to a jury trial on all those?

THE DEFENDANT:  Yes, I do.

(RT 381.)

The court next ascertained that petitioner had spoken to his attorney about the matter and was agreeing to waive the jury trial.  (RT 382.)

At that point the prosecutor stated that the court could impose the serious felony enhancements only if the jury found petitioner had personally used a weapon.  (RT 382.)

The following then took place:

THE COURT:  Well, my feeling on this, that it is an issue.  And I'll hear further argument with regard to the 1192.7.  But it is an issue for the jury preliminarily with regard to any prior issues, including 1192.7.  But if both sides waive jury with reference to those issues, then it's still an issue to be determined by the trier of fact.  But at that point, the trier of fact becomes the Court.  That's my feeling on that.

MR. CANNON [prosecutor]: Okay.

THE COURT: Mr. Rekoon, do you have any opinions with reference to whether or not an 1192.7 allegation, if it is an issue for the trier of fact in this proceeding, whether or not there's any reason why he can't be tried by the Court as opposed to the jury?

11

**United States District Court**
For the Northern District of California

1    MR. REKOON [defense counsel]:  I would agree with that.  However, to
2    expand on my previous position, I don't believe it is an issue for either this
     Court or this jury.

3    THE COURT:  I understand your position on that.  But if it's an issue for either
     the – for the trier of fact, do you believe they can be equally tried before the
4    Court with a jury waiver?

5    MR. REKOON:  Yes.

6    MR. CANNON:  Under that, I would submit it.

7    THE COURT:  Do you waive jury with reference to the bifurcated issues in
     this trial?
8
     MR. CANNON:  Yes, sir.
9
     THE COURT:  And with that, then, I accept the jury waivers from the
10   defendant and the People with reference to all bifurcated issues in this trial.

11   Now, going on to which issues are matters for the trier of fact in connection
     with this case.
12
     I'm going to take the matter under submission.  But I will instruct the
13   prosecution to be ready to prove to the Court all bifurcated issues in this trial,
     including 1192.7.  But I will take the matter under submission, and not make a
14   final decision as to whether or not that requires a finding by the trier of fact in
     this proceeding, subject to any other arguments counsel wishes to make, if and
15   when we commence that part of the decision.

16   (RT 382-384.)

17        The court then discussed with the parties whether the trier of fact or the court would

18   determine whether the current offenses were serious felonies.  (RT 384-389.)  At the

19   conclusion of the discussion, the prosecutor stated:

20        [I] [w]ant to make sure the defendant understands that what he's also waiving
          his right to a jury on is [sic] particular finding in this case, these charges, if he's
21        convicted of felony in either Count 1, or the lesser related Count 2, 245, that
          it's to determine whether or not this case would be a strike for future purposes,
22        which is a separate and distinct issue from the existence of his prior
          convictions.
23
          THE COURT: I think you're shortening it.  But I think the allegation that
24        you're seeking a finding on is 1192.7 as to whether or not that's a strike in the
          future.  That's another issue.
25
          MR. CANNON [the prosecutor]:  Correct.
26
          THE COURT:  The question is, are – do these current offenses qualify under
27        1192.7.

28        MR. CANNON:  Correct.

12

THE COURT:  As serious offenses.  As to what future effect that's going to have that's up to another Court.

You do understand that, sir, that was one part of what I laid out to you is, what's going to be tried here by the Court at this point is not just whether or not you suffered the prior convictions, but if it is an issue that has to be decided, you're also going to be having the Court determine whether or not these offenses constitute offenses under 1192.7.

MR. REKOON:  That's fine.

THE DEFENDANT:  Yes, sir. I do understand that.

THE COURT:  That's part of waiver of the jury trial?

THE DEFENDANT:  Yes, it is.

THE COURT:  Very good.  So, if that issue is to be decided, it will be decided by the Court.

THE DEFENDANT:  Yes.

THE COURT:  You may have a right to a jury trial on that issue.  And you waive that right?

THE DEFENDANT:  I do.

MR. CANNON:  Thank you, Your Honor.

THE COURT:  The court does find a free, willing and voluntary waiver of his right with regard to that issue, as well as on the prior issues.

All right.  Then, if there's a conviction with reference to felonies in this case, then the second part of the case will proceed as a court trial.

MR.. REKOON:  All right.

(RT 389–391.)

The jury then returned the following verdict:

WE, THE JURY IN THE ABOVE-ENTITLED CAUSE, find Defendant Robert Lamar Ball GUILTY of the crime of assault upon transportation personnel with a deadly weapon to wit: metal chain or force likely to produce great bodily injury on Ricardo Cano, in violation of Penal Code section 245.2, a felony, as alleged in Count One of the Information filed herein.

(CT 144.)

By the same verdict, the jury found petitioner not guilty of battery with serious bodily injury, but found him guilty of the lesser offenses of misdemeanor battery and misdemeanor assault.  (RT 396-397.)  The court then discharged the jury; petitioner did not object. (RT 397-

398.)  After the jury was discharged, a court trial on the sentencing enhancement allegations was set.  (RT 400.)

At the court trial, defense counsel argued the following with respect to a determination as to whether the felony assault was a serious felony:

> MR. REKOON:  Regarding the 1192.7, I would draw the argument that it's not ripe, after reading Yarbrough, and discovery 969(f), which gives the Court or the jury the authority to hear it.  But Count 2, I believe, gives us the key as to whether it should be declared a serious felony or not, that the jury found not guilty on Count 2.  And Count 2 is battery with serious bodily injury.
>
> And the only inference we can draw from that is they didn't believe the chain was used.  Otherwise, that would be a guilty verdict with serious bodily injury.  They, instead, found misdemeanor conduct in Count 2, battery and assault, as misdemeanors.  Which, at first, left me kind of puzzled.  Then, I thought about it some more.  I see, Count 1, he was found guilty of assault with either force likely or with a deadly weapon.
>
> Based on the prior argument, I would have to say it would be with force likely, because they found, in Count 2, deadly weapon simply was not used.  If deadly weapon had been used, Count 2 would be guilty as a felony, not misdemeanors.
>
> As such, it's my belief that they found Mr. Ball's initial standing up to be the assault.  And it would qualify legally as an assault, putting somebody in the immediate apprehension of an imminent unlawful touching, and that everything led from that.  That the conduct of Mr. Ball was misdemeanor conduct, but for the injury.  And it's because of the injury that on Count 1 it was elevated to felony with force likely to produce.
>
> Had they brought a 12022.7 GBI, I'm sure we'd be in a much different situation now.  But the jury was not asked to find whether it was great bodily injury.
>
> What, in effect, we have is the jury elevating misdemeanor conduct to a felony because of the injury.
>
> That Count 2, it was clear that they did not buy the story of the chain, and as such, it gives credence to everything Mr. Ball said.
>
> The only thing I said on closing argument they took exception to, I believe, is where I said, standing up is not a crime.  That's where I believe they disagree and could legally find assault, everything flowing from that.

(RT 406-407.)

The court asked defense counsel how the jury could find that standing up was an assault with force likely to cause great bodily injury.  Defense counsel replied:

> MR. REKOON:  The standing up startled the victim to the point where it set in motion the events leading to his breaking his rib.  I believe their verdict on Count 2 shows it was a struggle and him running into a pole that broke the rib,

1
2

rather than the chain.  Again, had there been a chain, Count 2 would have to had been a felony, not a misdemeanor, especially the battery with serious bodily injury.  They did not find that.

3

THE COURT:  I understand they did that.

4
5
6
7

MR. REKOON:  But on Count 1, it was standing up, putting him in the immediate apprehension of imminent battery.  And standing up was of such force, maybe not in terms of applied physical force, but in such force that caused the startling of him and began winding up with a broken rib.  They would not tag him with causing the broken rib, they did not say the force used in the assault was enough to start the events in motion to cause the broken rib.

8

(RT 407-408.)

9
10
11
12
13
14
15
16

The court responded that its role was "not to attempt to divine what the jury found" (RT 408), and that it did not understand any basis by which the jury could have reached the verdict that it did if the jury had found only that petitioner stood up.  (RT 408-409.)  After the court asked defense counsel if the verdict could also be reconciled with a finding that petitioner used the chain, and defense counsel responded that it could, but that it was less likely than the scenario he had described, the court stated:  "And that's why I think that we get ourselves into trouble if we try to divine what [the jury's] theory was.  The law does not require that." (RT 413.)

17

The court then stated the following:

18
19

THE COURT:  All right.  Taking, first of all, the 1192.7(C)(23) and (c )(32) allegations.  I do find that, under the decisions under 1192.7, that it is a matter to be determined by the trier of fact.  So, I will make that determination.  I recognize that the issue is beyond a reasonable doubt.

20
21
22
23

I do not agree that the jury necessarily found, for whatever relevance this has, that the defendant did not use the chain.  I find that they could have found that he used the chain, but that they weren't sure what caused his fractured rib, whether it could have been into some part of the vestibule, some part of the railing, etc.  But if they had found he did use the chain but weren't sure as to what caused the fractured rib, I think that would be consistent with their verdicts.  However that is an aside.

24
25
26

Based on the fact that Mr. Cano, whose testimony I did believe, saw the flash of metal with the first swing, based on his description of how he felt after the first punch, based primarily on those two pieces of evidence in the case, I do find beyond a reasonable doubt that the allegations under 1192.7(c)(23) and (c)(32) are true.

27
28

Were it not for that testimony, there would be issues, because I think there would otherwise be a reasonable doubt with reference to the fact the chain was found on the ground.

United States District Court
For the Northern District of California

15

(RT 414-415.)

The court then found the allegations of the prior serious felonies were true. (RT 415-416.)

On appeal, petitioner argued that the finding by the trial court that the felony assault was a serious felony violated <u>Blakely v. Washington</u>, 542 U.S. 296 (2004) and <u>Apprendi v. New Jersey</u>, 530 U.S. 466(2000).  The Court of Appeal rejected petitioner's argument, finding as follows:

> Relying primarily on <u>Blakely</u>, <u>supra</u>, 542 U.S. 296 and <u>Apprendi</u>, <u>supra</u>, 530 U.S. 466, appellant contends the trial court erred in denying him a jury trial on the issue of whether his current offense constituted a serious felony for purposes of imposition of the five-year prior serious felony enhancements.  In <u>Blakely</u>, the Supreme Court reiterated its holding in <u>Apprendi</u>, that "'[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'"  After <u>Blakely</u> and <u>Apprendi</u>, it is clear that factual findings in order to determine whether the charged offense is a serious felony for the purpose of imposing a sentence enhancement under section 667, subdivision(a)(1), trigger Sixth Amendment protections.
>
> Plainly, the Supreme Court announced new Sixth Amendment rights in <u>Blakely</u>. The Court, however, did nothing to disturb the existing jurisprudence applicable to the waiver of those Sixth Amendment rights.  To the contrary, <u>Blakely</u> states: "When a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding.  If appropriate waivers are procured, States may continue to offer judicial factfinding as a matter of course to all defendants who plead guilty.  *Even a defendant* who stands trial may consent to judicial factfinding as to sentence enhancements, which may well be in his interest if relevant evidence would prejudice him at trial."
>
> Thus, the <u>Blakely</u> court made it clear that a criminal defendant may waive his constitutional rights and consent to judicial factfinding as to sentence enhancements.  In the present case, while the jury deliberated on the charged offenses, appellant waived his right to a jury trial and expressly consented to the trial court determining whether or not "these *current offenses* qualify under 1192.7."  (Italics added.)  The court clarified, "if it is an issue that has to be decided, you're also going to be having the court determine whether or not these offenses constitute offenses under 1192.7." Defense counsel responded, "That's fine."  Appellant chimed in, "Yes, sir. I do understand that."[FN5] Consequently, appellant was put on notice and "consent[ed] to judicial factfinding as to sentence enhancements," as sanctioned by <u>Blakely</u>.
>
> > FN5. We find the record here is different than the record reviewed in <u>Taylor</u>, where the appellate court found "no indication" that the defendant's waiver "extend[ed] to the factual basis for a finding that the charged offenses constituted serious felonies."  In contrast, the record before us shows that appellant was informed

1

of, and intended to relinquish, his right to have a jury decide
whether or not the current offense for assaulting a transportation
worker constituted a serious felony.

2

3

(Ex. F at 10-11 (citations omitted).)

4

            b.    Analysis

5

6          Respondent does not dispute that under Apprendi and Blakely, the Sixth Amendment

7    right to a jury is implicated when factual findings must be made to determine whether the

8    charged offense is a serious felony for the purpose of imposing a sentence enhancement under

9    Penal Code § 667(a).  Here, petitioner argues that the state courts erroneously determined that

10   he waived his right to a jury trial on that issue.  Specifically, petitioner claims he waived a

11   jury trial only as to the legal significance of the conviction for the felony assault, and not as to

12   the factual findings regarding the manner in which that offense was committed.

13         Petitioner, however, has failed to present clear and convincing evidence to rebut the

14   presumption of correctness that must be attributed to the Court of Appeal's finding as to the

15   scope of the waiver.  See 28 U.S.C. § 2254(e)(1).  In particular, petitioner contends that the

16   record shows he did not waive a jury trial on the factual findings because his attorney argued

17   to the trial court that it should assume that the jury's verdict finding petitioner was not guilty

18   of battery with serious bodily injury, the offense charged in Count 2, necessarily meant the

19   jury did not find petitioner used a chain when he assaulted the victim.  Such argument by

20   defense counsel, that the court should attempt to intuit, and then rely upon, what the jury

21   found in order to make a determination of guilt, does not, however, amount to clear and

22   convincing evidence that petitioner intended only to waive a jury determination as to the legal

23   effect of such conviction.  Indeed, at the time petitioner waived a jury, there had been no

24   determination by the jury as to the charged offenses.  Consequently, at the time of the waiver,

25   the issue of whether the offense charged in Count 1 qualified as a serious felony turned on a

26   factual question:  Did petitioner use a dangerous or deadly weapon, specifically, the chain?

27   Further, the Court of Appeal's determination that petitioner indicated his intent to waive his

28   right to a jury trial on that question is amply supported by the record, as evidenced by

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   petitioner's express consent to the trial court's determining whether the current offenses, and

2   not just the prior felonies, would qualify as serious felonies, petitioner's lack of any objection

3   when the court discharged the jury after it rendered its verdict on the charged offenses, and the

4   lack of any argument by defense counsel at any time during the court trial that the court did

5   not have the power to determine whether petitioner used the chain during the felony assault or

6   that petitioner had not waived his right to a jury trial as to that factual determination.

7       Based on the above-described record, the Court has no basis for a finding that the

8   Court of Appeal's rejection of this claim, specifically, that the trial court denied petitioner a

9   jury trial, was based on an unreasonable determination of the facts.  See 28 U.S.C.

10  § 2254(d)(2), (e)(1).  Nor does the Court have any basis for a finding that the Court of

11  Appeal's rejection of such claim either was contrary to or involved an unreasonable

12  application of clearly established Supreme Court law.  See 28 U.S.C. § 2254(d)(1).

13      Accordingly, petitioner is not entitled to habeas relief on this claim.

14      3.    Ineffective Assistance of Counsel

15      Petitioner claims he was denied effective assistance of counsel due to his trial

16  attorney's failure to adequately investigate the nature of petitioner's waiver discussed above.

17          a.    Background

18      In his state habeas petitions filed in the Court of Appeal and California Supreme Court,

19  petitioner contended his trial counsel did not understand or intend petitioner's waiver to

20  extend to the jury's factual findings on whether the felony assault qualified as a serious

21  felony, and, to the extent counsel unwittingly allowed petitioner to waive his right to a jury

22  trial on such question, such error constituted ineffective assistance of counsel.

23      In particular, citing Strickland v. Washington, 466 U.S. 668 (1984), petitioner asserted

24  that defense counsel's performance was deficient because there was no tactical reason for

25  allowing petitioner to waive his right to have the jury make the noted factual findings.  In

26  support of his argument, petitioner submitted the declaration of his trial counsel, Barry G.

27  Rekoon ("Rekoon"), in which said counsel attested to the following about his advice to

28  petitioner regarding determination of the serious felony allegations:

**United States District Court**
For the Northern District of California

> Prior to trial, the court granted my request to bifurcate the issue of the truth of the prior conviction allegations. During jury deliberations, I advised Mr. Ball of his right to a jury trial on the prior conviction allegations, and Mr. Ball agreed to waive this right in lieu of a court trial on the allegations. I advised the court of Mr. Ball's willingness to waive his jury trial right on the allegations, and the court proceeded to elicit a jury trial waiver form Mr. Ball, including on whether his current offenses constituted serious felonies under section 1192.7, subdivision (c).
>
> At no time did I intend or understand that Mr. Ball would be waiving his right to a jury trial on any *factual findings* relating to whether his current offenses constituted serious felonies for purposes of the section 667, subdivision (a) allegations. To the contrary, at all times I intended and understood that Mr. Ball's waiver would only cover his right to have the jury determine whether his current convictions *legally* qualified as serious felonies under section 1192.7, subdivision (c). Indeed my understanding of the scope of Mr. Ball's waiver is demonstrated by the fact that during the hearing on the truth of the section 667, subdivision (a) allegations, as well as during the sentencing hearing, I argued that the court was bound by the jury's factual findings relating to the section 245.2 conviction, which findings were insufficient to support a determination that his offense qualified as a serious felony under section 1192.7, subdivision (c).

(Ex. J Attachment A.)

Additionally, petitioner argued that, but for counsel's error, there was a reasonable probability that, had the jury been given the opportunity to decide whether petitioner used a deadly weapon during the commission of the assault on the victim, it would have found that petitioner did not use such a weapon. Petitioner based such argument on the fact that defense counsel devoted a substantial portion of his closing argument to convincing the jury that petitioner did not hit the victim with the chain, which was the only potential deadly weapon discussed at trial (RT 338-344, 355), and, as defense counsel had argued to the court during the trial on the sentencing allegations, the jury's verdict that petitioner was guilty of assault with either the use of force or a deadly weapon, but was not guilty of battery with serious bodily injury, indicated the jury's finding that petitioner had not used the bicycle chain against the victim during the assault.

Both the California Court of Appeal and the California Supreme Court summarily denied petitioner's claim without citation or comment.

United States District Court
For the Northern District of California

b.      Analysis

As there is no reasoned state court decision addressing petitioner's ineffective assistance of counsel claim, the Court must conduct an independent review of the record to determine whether the California Supreme Court's denial of such claim was an objectively unreasonable application of clearly established federal law.  See Richter v. Hickman, 521 F.3d 1222, 1229 (9th Cir. 2008).

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel.  Strickland, 466 U.S. at 686.  The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result.  Id. In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, a petitioner must establish two things.  First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms.  Id. at 687-88.  Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  Id.[4]

Here, given Rekoon's declaration, the Court finds defense counsel's performance was deficient.  Although the Court has found it was not unreasonable for the state courts to find a jury waiver based on the objective record before the trial court, nothing in that record directly contradicts defense counsel's declaration as to his subjective understanding.  Indeed, this Court can think of no tactical advantage in defense counsel's waiver of a jury finding as to the

---

[4]For Strickland claims considered on federal habeas corpus review, it is unnecessary to conduct a further harmless error analysis under Brecht v. Abrahamson, 507 U.S. 619, 637 (1993), to determine whether the error also had a substantial and injurious effect on the jury's verdict. Moore v. Czerniak, 574 F.3d 1092, 1101 n.6 (9th Cir. 2009); see Avila v. Galaza, 297 F.3d 911, 918 n. 7 (9th Cir. 2002) ("We need not conduct a harmless error review of Strickland violations under Brecht . . ., because '[t]he Strickland prejudice analysis is complete in itself; there is no place for an additional harmless-error review.'")

United States District Court
For the Northern District of California

factual predicate for an enhancement based on the very issues presented to the jury on the charged offense, let alone a highly contested issue such as petitioner's use of the chain.

Further, had the enhancement gone to the jury for determination, jury unanimity would have been required for a finding that the allegation of personal use of a deadly weapon was true beyond a reasonable doubt. As noted above, however, the trial judge himself conceded that he only found the enhancement had been proved because the victim testified he thought he saw something metallic in petitioner's hand, and absent such testimony he would have had a reasonable doubt as to whether the chain was used. Such evidence is not of such convincing force as to suggest the jury would have reached the same result, and particularly in light of the testimony of Dr. Luna that the bruising on petitioner's ribs was equally consistent with a blow from a bare fist. Moreover, the jury's finding that petitioner committed a simple battery, rather than a battery in which petitioner inflicted serious bodily injury, reflects a doubt on the jury's part as to how the victim came to sustain a broken rib.[5]

Based on the above, the Court finds petitioner has shown that, absent counsel's deficient performance, there is a reasonable probability that the jury would have reached a different result than the trial court. Accordingly, the Court finds the California Supreme Court's denial of petitioner's ineffective assistance of counsel claim involved an objectively unreasonable application of Strickland, and will grant petitioner's claim for habeas relief based on counsel's erroneous failure to ensure that the serious felony allegation was tried to the jury.

### CONCLUSION

For the reasons stated above, the Court orders as follows:

1. The petition for a writ of habeas corpus is hereby DENIED as to petitioner's claims of juror misconduct and trial court error concerning the waiver of petitioner's right to a jury

---

[5]The jury was instructed that the term "serious bodily injury" "includ[es] . . . bone fracture." (CT 115.) There was no dispute that the victim sustained a fractured rib. Consequently, the only issue remaining as to Count 2 was whether that injury was inflicted by petitioner.

1    trial on the sentencing allegations.

2        2.   The petition for a writ of habeas corpus is hereby GRANTED as to petitioner's

3    ineffective assistance of counsel claim.  Within ninety days of the date of this order, the State

4    of California either shall retry petitioner on the serious felony allegation or vacate his sentence

5    and arrange for him to be sentenced without use of the serious felony finding.

6        3.  A copy of this order shall be sent to petitioner, respondent and respondent's

7    counsel, petitioner's state appellate counsel Peter Harris Gold, 2269 Chestnut Street, Suite

8    124, San Francisco, CA 94123, and the First District Appellate Project, 730 Harrison Street,

9    Suite 201, San Francisco, CA 94107.

10        The Clerk of the Court shall enter judgment and close the file.

11        IT IS SO ORDERED.

12   DATED: November 1, 2010

13

14                                         MAXINE M. CHESNEY
                                           United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28